**UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASON SMITH, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. _____ |
| | : | |
| v. | : | |
| | : | **ELECTRONICALLY FILED** |
| HIGHLANDS SCHOOL DISTRICT, | : | |
| | : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |
| | : | |

**COMPLAINT**

AND NOW, this 29th day of August, 2019, Plaintiff Jason Smith, by and through his

attorneys Carolyn E. Paletta, Esq., Nicholas Pahuta, Esq., and STEELE SCHNEIDER, files the

within Complaint against Defendant Highlands School District and in support thereof avers as

follows:

**Jurisdiction**

1.      This is an action under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601,

et seq.

2.      This Court has subject matter jurisdiction over Plaintiff's FMLA claim pursuant

to 28 U.S.C. § 1331.

3.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b),

because the events giving rise to this claim occurred in this judicial district.

**Parties**

4.      Plaintiff Jason Smith ("Plaintiff" or "Jason") is an adult individual residing at 397

Airport Road, Worthington PA 16262.

1

5.     Defendant Highlands School District ("Defendant" or "the District") is a public school district in Allegheny County, Pennsylvania. The District's main administrative offices are located at 1500 Pacific Avenue, PO Box 288, Natrona Heights, PA 15065.

## Factual Background

6.     Jason was employed by the District since 2000. Most recently, Jason was a fourth-grade teacher at Grandview Upper Elementary School in the District.

7.     At all times relevant to this Complaint, Samantha Perlik and Catherine Russo were the principals at Grandview Upper Elementary.

8.     At all times relevant to this Complaint, Dr. Monique Mawhinney was the District's substitute Superintendent.

9.     At all times relevant to this Complaint, the District employed 50 or more employees within a 75-mile radius of Jason's worksite.

## Jason's Medical Leave

10.     In early 2018, Jason began experiencing extreme stress and anxiety on the job. These symptoms were brought on by the death of Jason's father, financial difficulties, and diagnoses of hypertension and high anxiety disorder.

11.     Jason's mounting health concerns began to manifest in the following ways: loss of appetite, inability to sleep, struggle to focus, nervousness, depression, and anxiety.

12.     During this period, Jason was prescribed a course of antidepressants.

13.     In an attempt to alleviate the effects of these serious health conditions, Jason began to self-medicate with alcohol.

14. Jason's health issues resulted in him missing several days of work in March 2018. On those days, Jason attempted to call out of work using the District's online portal AESOP, but the application was frequently unresponsive or malfunctioning.

15. On March 29, 2018, Jason received a Statement of Charges letter outlining Jason's failure to properly call off of work through the District's online portal AESOP.

16. During the days mentioned in the March 29 letter, Jason had attempted to call off properly through the AESOP system but was unable to. Instead, he either called personally or had a family member call to notify the District that he was unable to come in to work.

17. Eventually, Jason's health concerns became so debilitating that he knew that he had to take an extended leave from the District.

18. On April 12, 2018, Jason faxed a Family and Medical Leave Act Request form to the District. This packet of forms included notes from Jason's treating psychiatrist Dr. John Soffietti, which indicated that Jason needed time off of work to complete detoxification and follow-up care for alcohol dependence.

19. For 12 weeks, Jason was admitted to a rehabilitation program and received outpatient aftercare treatment at Butler Memorial Hospital Regional Recovery Center.

20. On June 12, 2018 the District conducted an informal Loudermill meeting regarding the allegations raised in the March 29 Statement of Charges.

21. Jason did not attend this Loudermill hearing.

22. That hearing resulted in a seven-day unpaid suspension in July and August 2018, per a letter sent by the District on July 2, 2018.

23.    In order to return to work following his FMLA leave and unpaid suspension, the July 2, 2018 letter required Jason to provide a fitness to return to work letter from his physician and evidence that he completed an alcohol rehabilitation program.

24.    On or around August 2018, Jason provided Dr. Mawhinney with a note from his doctor certifying his ability to return to work. He also provided Dr. Mawhinney confirmation that he attended inpatient and outpatient treatment programs at Butler Memorial Hospital.

25.    Jason's return to work for the 2018-2019 school year was also predicated on his agreement to a "Last Chance Agreement" written by the District.

26.    While Jason signed this Last Chance Agreement, the District never provided him with a copy of the executed agreement.

**The District's Expressed Hostility to Employees on FML**

27.    Substitute Superintendent Mawhinney conducted an administrative meeting in July 2018 with all of the District's administrators and principals.

28.    During this meeting, Dr. Mawhinney referred to two District employees, without directly mentioning their names, who were on Family Medical Leave at that time.

29.    When this administrative meeting occurred, there were two teachers in the District on Family Medical Leave: Jason Smith and Andrew Kotyk.

30.    During this administrative meeting, Dr. Mawhinney directed the principals of those employees who were on Family Medical Leave to be "in those rooms every day until [they] find something."

31.    This statement was directed to Jason's principal Catherine Russo and Charlie Mort, another principal at the District.

32.     Upon information and belief, this directive instructed the principals to find some reason to discipline the teachers that had taken Family Medical Leave.

### Return from Medical Leave, Last Chance Agreement, and Surprise Performance Improvement Plan

33.     Jason returned to work on September 20, 2018.

34.     Upon returning to work, Jason was required to execute a "Last Chance Agreement" with the District.  *A true and correct copy of the Last Chance Agreement is included with this Complaint as Exhibit A.*

35.     In October 2018, Jason got notice that he needed to meet with Samantha Perlik and his union representation Nancy Dean.

36.     During this meeting, he was told that he was being written up for using his cell phone at a faculty meeting.

37.     Upon information and belief, there is no District policy specifically prohibiting the use of cell phones in faculty meetings.

38.     Among other things, Jason had used his cell phone at work to take notes in meetings, set calendar reminders, and to read the time.

39.     As a result of this meeting, Samantha Perlik told him that he would be getting a letter put in his file. This was his first formal disciplinary action in 19 years working with the District.

40.     During the meeting with Perlik and his union representative Nancy Dean and Perlik, Ms. Dean asked why Jason was not just receiving a warning for these seemingly innocuous offense. Perlik said that they needed a formal letter because he was on an improvement plan.

41.    This was the first time that Jason was informed that he was on an improvement plan. *A true and correct copy of the Performance Improvement Plan is included with this Complaint as Exhibit B.*

### Negative Employee Review

42.    Jason received an evaluation in the fall of 2017 for the 2017-2018 school year.

43.    Jason's formal evaluation was based on a performance observation conducted by Catherine Russo. *A true and correct copy of Plaintiff's Formal Observation Report is included with this Complaint as Exhibit C.*

44.    Regarding Jason's performance as it relates to "Professional Responsibilities," the 2017 Formal Observation Report indicates that Catherine Russo evaluated Jason to be "proficient" in the following categories: Reflecting on Teaching, Maintaining Accurate Records, Communicating with Families, Participating in a Professional Community, Growing and Developing Professionally, Showing Professionalism.

45.    In fact, Russo determined that Jason was "proficient" or better in every category on his 2017 Formal Observation Report.

46.    At a June 2018 administrative meeting, Dr. Mawhinney said that she wanted to change the protocol for annual evaluations in the 2018-2019 school year.

47.    At this June 2018 meeting, Dr. Mawhinney indicated that she wanted more than just the observation report to be included with the Teacher Ratings.

48.    Upon information and belief, Jason initially received a Teacher Rating Form that indicated a "2" rating for Professional Responsibilities.

49.    Upon information and belief, following this Faculty meeting in June 2018, Jason's 2017-2018 Teaching Rating was modified by Principal Russo, who was directed by Dr.

6

Mawhinney to change all of his ratings to "0." *A true and correct copy of this modified Classroom Teacher Rating Form, signed by Samantha Perlik, is included as Exhibit D.*

50.   Principal Russo admitted to Jason that Dr. Mawhinney directed her to change all of his rating categories to "0" but that she was uncomfortable with that evaluation. To appease Dr. Mawhinney, Principal Russo changed Jason's "Professional Responsibilities" rating to "0."

51.   As a result, Jason's annual evaluation for the 2017-2018 school year resulted in a "needs improvement" rating when it had previously been a "proficient" rating.

52.   In directing her subordinate to arbitrarily lower Jason's evaluation scores, Dr. Mawhinney violated Pennsylvania's Code of Professional Practice and Conduct for Educators. Specifically, Dr. Mawhinney and Russo are prohibited from "knowingly and intentionally distort[ing] evaluations of colleagues." 22 Pa. Code § 235.11.

53.   Pursuant to the Pennsylvania Public School Code, an assessment of "needs improvement" requires the employee to be placed on a performance improvement plan and lays the groundwork for termination for cause. *See* 24 P.S. §11-1122; §§ 11-1123 (f)(3-5).

54.   Jason's 2017-2018 Rating was signed by Principal Perlik on January 18, 2019, even though it was based on Principal Russo's evaluation from 2017.

55.   Upon information and belief, no other teacher evaluations were changed at the District for the 2017-2018 school year following the June 2018 Faculty Meeting.

**Jason's Resignation**

56.   Following this change in his employment review, Jason became increasingly concerned that the District was creating pretextual circumstances in which he could be fired.

7

57.    Jason's suspicions about his employer's motives were bolstered by reports of the July 2018 administrative meeting when Dr. Mawhinney expressed her intention to "find something" on the teachers who had taken medical leave.

58.    Furthermore, Jason began to worry that further disciplinary action—including the performance improvement plan, the Last Chance Agreement, and any additional "needs improvement" evaluations concocted by the District—would affect his ability to get another teaching job if he was terminated from the District.

59.    As a result of this treatment, Jason continued to experience the anxiety and depression that necessitated his medical leave in 2017.

60.    Jason felt he was being forced out of his position and that continuing at the District would result in irreparable harm to his professional reputation and further psychological harm.

61.    On February 25, 2019, Jason resigned from his teaching position at the District.

### Count I: FMLA Retaliation
### 29 U.S.C. § 2615, 29 CFR § 825.220

62.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

63.    In April 2018, Jason exercised his right to Family Medical Leave to address his own serious health conditions.

64.    The FMLA and regulations promulgated thereunder prohibit an employer from discriminating or retaliating against employees who have exercised rights and/or taken FMLA leave. 29 U.S.C. §2615(a)(2); 29 C.F.R. § 825.220(c).

65.    Defendant Highlands School District is an "employer" as that term is defined by the FMLA. *See* 29 U.S.C. § 2611(4)(A).

66.     Jason is an "eligible employee" as that term is defined by the FMLA. He was employed for at least 1,250 hours of service during the previous 12-month period at a worksite where 50 or more employees were employed within 75 miles of the worksite. *See* 29 U.S.C. § 2611(2)(A).

67.     Defendant willfully violated the FMLA and regulations promulgated thereunder, in that they subjected Jason to increased scrutiny following his use of FMLA leave—including but not limited to Dr. Mawhinney instructing his supervisors to "find something" in his classroom.

68.     Further, Defendant's actions constitute retaliation insofar as his performance assessments were arbitrarily and unlawfully lowered in order to a "needs improvement" rating.

69.     Defendant's conduct, acts and omissions, as more fully described above, were knowing, willful, and performed in bad faith.

70.     Any reasonable person in Plaintiff's position would have felt compelled to resign, considering the treatment Jason received and the campaign of harassment and unfair treatment instigated by Dr. Mawhinney.

71.     Plaintiff was constructively discharged from the District.

72.     As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost wages, benefits, and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendants and damages in an amount to be determined at trial, as follows:

a. That Plaintiff be awarded actual and consequential damages to make Plaintiff whole, including back pay with prejudgment interest, front pay and compensation for lost

benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendants' discrimination, retaliation, and wrongful constructive termination, plus interest;

b. That Plaintiff be awarded liquidated damages as provided for in 29 U.S.C. § 2617(a)(1)(A)(iii);

c. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees, pursuant to 29 U.S.C. § 2617(a)(3); and

d. That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:      August 29, 2019

Respectfully Submitted,

STEELE SCHNEIDER

*/s/ Nicholas Pahuta, Esquire*

Attorneys for Plaintiff, Jason Smith

Carolyn E. Paletta, Esquire
PA I.D. No. 314230
Nicholas Pahuta, Esquire
PA I.D. No. 324355

One Gateway Center
420 Ft. Duquesne Blvd., Suite 500
Pittsburgh, PA 15222

412-235-7682
412-235-7693 (facsimile)
carolynpaletta@steeleschneider.com
nickpahuta@steeleschneider.com